# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# BEAUFORT DIVISION

| | | |
|---|---|---|
| ALBERT M. CALLAND III and<br>CYNTHIA K. CALLAND, | )<br>)<br>) | |
| Plaintiffs, | )<br>) | No. 9:14-cv-0420-DCN |
| vs. | )<br>) | |
| | ) | **ORDER** |
| LLOYD H. CARR, *personally and as*<br>*Trustee of the Lloyd H. Carr Trust dated*<br>*June 17,* 1998, LAURIE K. CARR, and<br>LLOYD H. CARR TRUST, *dated June 17,*<br>*1998*, | )<br>)<br>)<br>)<br>)<br>) | |
| Defendants. | )<br>) | |

This matter is before the court on defendants' motion for attorney's fees. For the reasons that follow, the court awards defendants $110,767.94. This includes $104,600.00 in attorney's fees and $6,167.94 for expenses incurred by defendants' counsel.

## I. BACKGROUND

This case arises from the purchase of a Hilton Head Island home by plaintiffs Albert and Cynthia Calland (the "Callands") from defendants Lloyd and Laurie Carr (the "Carrs"). On November 22, 2010, the Carrs filled out a South Carolina Residential Disclosure Statement, as required under the South Carolina Code of Laws, Title 27, Chapter 50, Article I. Defs.' Mot. Summ. J. Ex. 22. The Carrs indicated on the disclosure statement that they had no knowledge of any "leakage or other problem" with the roof and no knowledge of any "water seepage, leakage, dampness or standing water, or water intrusion from any source in any area of th[e] structure." Id. They further

1

indicated that had no knowledge of any "environmental hazards," including "toxic mold or other hazardous or toxic material." Id.

The Callands acknowledged receiving the disclosure statement on February 1, 2011, and signed the sales contract for the house on February 4, 2011. On March 25, 2011, the Callands closed on the house. Id. The Callands moved into the home permanently in July 2012, after having renovation work done between February and June 2012. Cynthia Dep. 133:14–134:5, 148:20–149:17. At some point in 2012, the Callands discovered mold in two rooms in the basement. Cynthia Dep. 130:21–131:2. Additionally, a contractor found "a little bit" of mold behind a piece of molding. Cynthia Dep. 153:3-8.

In October 2013, the Callands' attorney wrote to the Carrs, seeking to rescind the sale on a claim that the Carrs had concealed "prior floods at the Home of which [they] were] aware and which [they] failed to disclose." Defs.' Mot. Summ. J. Ex. 10. When the Carrs did not respond to the letter, the Callands filed suit in South Carolina state court on January 10, 2014, claiming negligent misrepresentation and seeking damages and rescission of the sales contract. Defendants removed the case to federal court on February 18, 2014. On October 20, 2014, defendants moved for summary judgment, which this court orally granted at the January 22, 2015 hearing and later supplemented with a written order. In the May 6, 2015 order, the court found that a case issued by the South Carolina Court of Appeals in 2008 resolved the Carrs' motion for summary judgment. On May 13, 2015, the Carrs filed a motion for attorney's fees. The Callands responded on June 1, 2015, to which the Carrs replied on June 9, 2015. This matter has been fully briefed and is ripe for the court's review.

## II.  DISCUSSION

### A.     Basis for Attorney's Fees

The Carrs argue that they are entitled to attorney's fees based on a provision in the Residential Property Condition Disclosure Act ("the Disclosure Act").[1]  Defs.' Reply to Mot. Att'y's Fees 9.  As an initial matter, the court finds that the Callands alleged a claim under the Disclosure Act.  Specifically, their complaint alleges that "Defendants failed to disclose knowledge in their possession concerning problems with the design and construction of the Home, of which Defendants knew or should have known."  Compl. ¶ 9.  It also alleges that the Callands relied upon the "statements made about the condition of the Home, including . . . statements made by the Defendants in the [d]isclosure" statement.  Id. ¶ 6.

Further, the disclosure statement at issue specifically cites Article I of the Disclosure Act.  Defs.' Mot. Summ. J. Ex. 24 at 4.  Thus, the attorney's provision section of the Act applies here as the Callands essentially alleged a failure to disclose "material information on the disclosure statement that [the Carrs] kn[ew] to be false, incomplete, or misleading."  S.C. Code Ann. § 27-50-65.  Notably, the South Carolina Court of Appeals has held that the attorney's fees provision of the Act applies even if it is not specifically cited in the complaint if the allegations implicate a claim based on the Act.  Winters v. Fiddie, 716 S.E.2d 316, 325 (S.C. Ct. App. 2011).

---

[1] The Carrs originally based their motion for attorney's fees on a provision in the sales contract that awards attorney's fees to the prevailing party in litigation commenced because of a "default" under the sales contract.  Defs.' Mot. Att'y's Fees 3; Ex. 2 at 4.  Because the Callands deny that they alleged a breach of contract in their complaint, the Carrs contend that they should be allowed to argue for attorney's fees on an additional ground.  Defs.' Reply 9.  The Carrs cite Federal Rule of Civil Procedure 54(c), which states that, other than a default judgment, "[e]very other final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings."  Id. at n.22.

Because the Carrs prevailed on the Callands' negligent misrepresentation claim that was based on the Disclosure Act, the court finds that the Carrs have established a basis for attorney's fees under S.C. Code Ann. § 27-50-65.[2]

### B.     Adequately Pleaded

The Callands argue that the Carrs' failure to properly request attorney's fees in their answer to the complaint provides an independent ground to deny the Carrs' motion. Pls.' Resp. 8.  They rely on Atl. Purchasers, Inc. v. Aircraft Sales, Inc., 705 F.2d 712, 716 (4th Cir. 1983), and Belk, Inc. v. Meyer Corp., U.S., No. 3:07-cv-168, 2010 WL 3474918, at *5 (W.D.N.C. Aug. 31, 2010), for the proposition that attorney fees are special damages that must be specifically pled in accordance with Federal Rule of Civil Procedure 9.  Id.  In Belk, the District Court for the Western District of North Carolina found "that the rule in Atlantic Purchasers that attorney's fees are special damages that must be specifically plead is binding precedent in this Circuit." 2010 WL 3474918, at *7. However, despite the defendant's failure to adequately plead attorney's fees, the court went on to analyze his request for such fees in accordance with the court's "authority under Rule 54(c)."  Id.

In response, the Carrs argue that they were not required to specifically plead attorney's fees in their answer.  Defs.' Reply 10.  They cite NGM Ins. Co. v. Carolina's Power Wash & Painting, LLC, No. 2:08-cv-3378, 2010 WL 3258134, at *1 (D.S.C. July 6, 2010) report and recommendation adopted, 2010 WL 3258145 (D.S.C. Aug. 16, 2010), in which this court granted summary judgment for the defendant and referred the issue of attorney's fees to the magistrate judge.  In NGM, the magistrate judge concluded that

---

[2] Having found a basis for attorney's fees on this ground, the court does not address whether the Carrs are also entitled to attorney's fees under the sales contract.

where the right to attorney's fees could only be determined after judgment, i.e., where they "were not required to be proved at trial as an element of damages," the right to attorney fees did not need to be pled in the answer. Id. at *2. The magistrate judge found that, instead, the correct procedure was a Rule 54 motion. Id. Rule 54(d)(2)(A) provides that "[a] claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages."

This court then affirmed the magistrate judge's recommendation after considering the plaintiff's objection that "attorney's fees are not recoverable costs under the substantive law of South Carolina [and] must be specifically pled pursuant to Rules 54(d)(2) and 9(g)." NGM Ins. Co. v. Carolina's Power Wash & Painting, LLC, No. 2:08-cv-3378, 2010 WL 3258145, at *1, *5 (D.S.C. Aug. 16, 2010). To address plaintiff's objection, the court first discussed whether other courts have required that attorney's fees be pled as special damages, noting that the Fourth Circuit has found, in dicta, that attorney's fees should be pled as special damages under Rule 9. Id. at *2 (citing Atlantic Purchasers, Inc., 705 F.2d at 716 n. 4). The court went on to note that other courts had "acknowledged the interplay between Rules 9(g) and 54" and had found that when the attorney's fees sought were not an element of damages, they did not need to be specifically pled. Id.; see Perry v. Serenity Behavioral Health Sys., 2009 WL 1259367, at *2 (S.D. Ga. May 6, 2009) ("Rule 54 governs instead of Rule 9(g) when the substantive law governing the action provides for attorney's fees as a recoverable cost as opposed to an element of damages."); Riordan v. State Farm Mut. Auto. Ins. Co., 2008 WL 2512023, at *3 (D. Mont. June 20, 2008) (finding that attorney's fees typically are "special

5

damages" within the meaning of Rule 9(g) when "the substantive law governing the action provides for recovery of attorney's fees as an element of damages, as opposed to a recoverable cost"); In re Rivastigmine Patent Litig. (MDL No. 1661), 2007 WL 1154000, at *7 (S.D.N.Y. Apr. 19, 2007) (dismissing plaintiff's argument that the attorney's fees must be specifically pled on the basis that the attorney's fees sought in the action were not an element of damages, and therefore fell under Rule 54). The NGM court then discussed whether South Carolina law required that attorney's fees be pled as an element of damages in declaratory judgment actions. Id. at *3–*4. The court found that it did not, and concluded that "pursuant to the substantive law of South Carolina and Rule 54(d)(2)(A), the defendant [was] entitled to recover attorney's fees based on his timely motion." Id. at *5.

Here, the Carrs contend that they are entitled to attorney's fees based on the Disclosure Act, which contains an attorney's fees provision. A South Carolina Court of Appeals case, Utilities Constr. Co. v. Wilson, 468 S.E.2d 1 (S.C. Ct. App. 1996), is instructive here. In Wilson, the court dismissed the plaintiff's objection that the defendant's failure to request attorney's fees in her answer precluded her from later seeking attorney fee's pursuant to the mechanic's lien statute. 468 S.E.2d at 2. The court first noted that plaintiff had waived this objection. The court then found that "even if properly raised, [there was] no prejudice to [plaintiff] because it had notice of the potential for an award of attorney fees given the mandatory language of the mechanic's lien statutes." Id. The mechanic's lien statute, S.C. Code Ann. § 29-5-10, contains "mandatory language" similar to that of the disclosure statement statute at issue here, S.C. Code Ann. § 27-50-65. Compare S.C. Code Ann. § 29-5-10 ("The costs which may

6

arise in enforcing or defending against the lien under this chapter, including a reasonable attorney's fee, may be recovered by the prevailing party."), with S.C. Code Ann. § 27-50-65 ("The court may award reasonable attorney fees incurred by the prevailing party."). In light of Wilson and NGM, the court finds that the Carrs did not need to specifically plead attorney's fees in their answer, and such fees may be properly awarded under Rule 54.

### C.     Amount of Attorney's Fees

Having found that the Carrs are entitled to attorney's fees, the court must now calculate a reasonable award. The Carrs seek an award in the amount of $110,767.94. This award comprises $104,600.00 for work done by attorney Edward J. Westbrook ("Westbrook") at the law firm Richardson Patrick Westbrook & Brickman and $6,167.94 for expenses incurred by Westbrook. Defs.' Mot. 6. The Carrs claim that Westbrook spent 209.2 hours "defending the Callands' claim." Id. at 3. This included an "extensive investigative and discovery effort," resulting in a "comprehensive motion for summary judgment" that Westbrook successfully argued at the January 22, 2015 hearing. Id. at 2–3. The Carrs note that although other attorneys and staff at Richardson Patrick also worked on their defense, they only seek compensation for Westbrook's efforts. Id. at 3. The Callands do not dispute the reasonableness of the amount the Carrs seek in attorney's fees. The Callands also do not contest the requested expenses. At the hearing, the Callands' counsel admitted that the expenses requested by the Carrs were taxable court costs, in accordance with 28 U.S.C. §§ 1914, 1917, and 1920(1) as well as Local Civil Rule 54.03. H'rg Tr. 14.

In determining the reasonable amount of attorney's fees to be awarded to the Carrs, the court must consider the following factors, often known as the Barber factors:

7

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorney fees awarded in similar cases.

Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 (4th Cir. 1978); see also CT&T EV Sales, Inc. v. 2AM Group, Inc., No. 11-cv-1532, 2012 WL 3010911, at *1 (D.S.C. July 13, 2012). The court need not rigidly apply these factors, as they may not all affect the fee award in a given case. "[T]hese factors should be considered in determining the reasonable rate and the reasonable hours, which are then multiplied to determine the lodestar figure which will normally reflect a reasonable fee." EEOC v. Servo News Co., 898 F.2d 958, 965 (4th Cir. 1990). In determining whether a rate is reasonable, the court is to consider "prevailing market rates in the relevant community." Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 175 (4th Cir. 1994) (quoting Blum v. Stenson, 465 U.S. 886, 895 (1984)).

The court has considered all the Barber factors, and considers the following factors particularly applicable to the current case.

>    1. **Time and Labor Expended.** The Carrs have attached a time and expense report from Westbrook's files, detailing the 209.2 hours that Westbrook spent working on their case from January 2014 to March 2015. Defs.' Mot. Ex. 7. The Carrs note that the hours recorded do not include all of the conferences and calls that Westbrook had regarding this case, nor do they reflect the time spent on this case by other attorneys and staff at Richardson Patrick. Id. at 4. The court

8

finds that the number of hours was reasonable given the investigative and discovery efforts required to resolve this case.

    2.    **Skill Required.**  The Carrs contend that their case "required a comprehensive approach to a multi-faceted factual scenario, requiring the skillful creation of a strong defense to each allegation of wrongdoing and breach." Defs.' Mot. 4.  Although this case did not present a complex legal question, it involved serious allegations against the Carrs, making them potentially liable for millions of dollars.  Accordingly, the Carrs justifiably engaged knowledgeable, competent counsel to defend them from the Callands' claims.

    3.    **Preclusion of Other Employment Opportunities.**  "This factor typically applies in circumstances where counsel was required to forgo some measure of compensation because of the time devoted to a case." Uhlig, LLC v. Shirley, 895 F. Supp. 2d 707, 716 (D.S.C. 2012) (citing Daly v. Hill, 790 F.2d 1071, 1082 n.15 (4th Cir. 1986) (noting that the effect of pursuing a civil rights action may require an adjustment of the hourly attorney fee rate in order to fully compensate an attorney for his or her lost opportunities to pursue other, more lucrative work)).  The Carrs note that obtaining Westbrook's representation "necessarily prevented him from being available to other clients with sophisticated litigation matters." Defs.' Mot. 4.  Such sophisticated litigation matters typically result in higher compensation.  For example, in the past Westbrook has received attorney's fees for representation in complex class actions in the range of $850 to $6,700. Central Wesleyan College v W.R. Grace & Co., No. 2:87-cv-1860, at *20 n.8; Defs.' Mot. 4.

9

4. **The Attorney's Expectations at the Outset of Litigation.** The Carrs agreed to pay Westbrook at the rate of $500 an hour at the outset of Westbrook's representation.  Id.

5. **The Amount in Controversy and the Results Obtained.**  The Fourth Circuit Court of Appeals has noted in a fee-shifting case that "the most critical factor in determining the reasonableness of a fee award is the degree of success obtained.'"  In re Abrams & Abrams, P.A., 605 F.3d 238, 247 (4th Cir. 2010) (quoting Doe v. Chao, 435 F.3d 492, 506 (4th Cir. 2006)).  Here, this case was extremely important to the Carrs not only because they faced a potential multi-million dollar verdict, but also because the complaint made "serious allegations attacking their integrity."  Defs.' Mot. 2.  Westbrook obtained a beneficial result for the Carrs—he successfully argued for dismissal at the summary judgment stage, sparing the Carrs from the burden and stress of a trial and appeal.

6. **The Experience, Reputation and Ability of the Attorneys.**  As the Carrs note, Westbrook has practiced for 38 years and is well-regarded and highly-skilled.  Defs.' Mot. 3.  He has provided exceptional representation in this case.

Accordingly, the court finds that the requested award of attorney's fees is reasonable in light of the Barber factors, given that the number of hours was reasonable under these conditions, Westbrook forewent more lucrative opportunities to undertake this representation, the issue was extremely important to the client, and Westbrook obtained a highly successful result.

### III.  CONCLUSION

For the foregoing reasons, the court hereby **GRANTS** the Carrs' petition for attorney's fees based on S.C. Code Ann. § 27-50-65 of the Disclosure Act.  The Carrs are entitled to attorney's fees in the amount of $104,600.00 and expenses in the amount of $6,167.94.  This award is based upon 209.2 hours of work done by attorney Westbrook at the rate of $500 per hour, as well as the expenses incurred by Westbrook during his representation.

**AND IT IS SO ORDERED**.

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**July 16, 2015**
**Charleston, South Carolina**